UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JOSE CARLOS GOMEZ-CAMEJO, | Case No. 2:26-cv-01364-MMD-DJA |
| Petitioner, | ORDER |
| v. | |
| TODD BLANCHE, *et al.*, | |
| Respondents. | |

**I.    SUMMARY**

Petitioner Jose Carlos Gomez-Camejo, an immigration detainee challenging his ongoing federal detention, filed a counseled first amended petition for federal habeas corpus relief under 28 U.S.C. § 2241. (ECF No. 19 ("Petition").)[1] For the reasons discussed below, the Court grants the Petition on Ground One and orders Petitioner released.

**II.    BACKGROUND**

Petitioner is a Cuban citizen. (ECF No. 19 at 3.) He was paroled into the United Stated in July 2022. (*Id.* at 4.) He filed an asylum application in November 2022. (*Id.*) On November 6, 2026, Petitioner was arrested by local authorities in Las Vegas. (*Id.*) After receiving a suspended 3-day state sentence, Petitioner was released into the custody of Immigration and Customs Enforcement ("ICE") on November 11, 2025. (*Id.*) Over eight months later, Petitioner remains in ICE custody.

Petitioner re-applied for asylum from detention in January 2026, citing fear of persecution if removed to Cuba. (*Id.* at 5.) The Department of Homeland Security ("DHS") moved to pretermit Petitioner's asylum application so Petitioner would have to pursue his

---

[1]Respondents responded (ECF No. 23) and Petitioner replied (ECF No. 24).

asylum claim from Ecuador under an Asylum Cooperative Agreement ("ACA"). (*Id.*) On February 27, Petitioner appeared *pro se* at a removal hearing ("Removal Hearing") before an immigration judge ("IJ"). (*Id.* at 6.) At the Removal Hearing, Petitioner expressed fear of harm if he were removed to Ecuador. (*Id.*) Petitioner was one of 39 Cuban migrants kidnapped and held for ransom near Cancun, Mexico. (*Id.* at 6 n.4 (citing Cat Rainsford, *Immigration Crackdowns Drive Cuban-on-Cuban Crime in South Mexico*, InSight Crime (Sep. 9, 2019), https://insightcrime.org/news/brief/cuban-crime-south-mexico/; Associated Press, *Mexico frees 39 Cuban migrants held for ransom*, 7News (Sep. 1, 2018), https://wsvn.com/news/us-world/mexico-frees-39-cuban-migrants-held-for-ransom/).) Petitioner argued to the IJ that these same trafficking cartels extend to Ecuador. (*Id.* at 6.) The IJ granted DHS's motion to pretermit and ordered Petitioner removed to Ecuador under the ACA. (*Id*. at 7 (citing ECF No. 19-10 at 4).) While Petitioner reserved his right to appeal at the Removal Hearing, Petitioner did not file a properly served appeal within the deadline. (*Id*. at 7-8.)

**III.    DISCUSSION**

Petitioner argues in Ground One of the Petition that his continued detention violates his Fifth Amendment right to due process and 8 U.S.C. § 1231(a)(6) because his removal is not reasonably foreseeable. (*Id.* at 9.) Respondents assert Petitioner's removal to Ecuador is reasonably foreseeable. (ECF No. 23 at 1-2.) The Court agrees with Petitioner and grants the Petition on this ground.

Habeas corpus "is an attack by a person in custody upon the legality of that custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). The Constitution guarantees that a writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A writ of habeas corpus may be granted to a petitioner who demonstrates they are in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The

Court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

Noncitizens with final removal orders are subject to mandatory detention during a 90-day "removal period." 8 U.S.C. §§ 1231(a)(1), (2)(A). This 90-day removal period generally begins on the date a removal order becomes final. *See id.* at § 1231(a)(1)(B). While the Attorney General has discretion to detain noncitizens beyond the 90-day removal period, the Supreme Court held that due process imposes an "implicit limitation" on that discretion. *See id.* at § 1231(a)(6); *Zadvydas*, 533 U.S. at 689. Indefinite detention "would raise a serious constitutional problem" under the Fifth Amendment. *Zadvydas*, 533 U.S. at 690. In *Zadvydas v. Davis*, the Supreme Court "held that [a non-citizen] may be detained only for 'a period reasonably necessary to bring about that [non-citizen's] removal from the United States.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021) (quoting 533 U.S. at 689). The Court found it "practically necessary to recognize some presumptively reasonable period of detention" to effectuate removal and adopted six months "to guide lower court determinations." *Zadvydas*, 533 U.S. at 702.

The Supreme Court rejected a rigid application of this six-month period, reasoning that a detainee is not guaranteed release after six months. *See id.* Correspondingly, the government is not guaranteed the right to hold a noncitizen for at least six months. *See Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) ("This six-month presumption is not a bright line... and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits."). The six-month presumption may be rebutted where there is no significant likelihood of removal in the reasonably foreseeable future. *See Munoz-Saucedo v. Pittman,* 789 F. Supp. 3d 387, 395-97 (D.N.J. 2025) (collecting cases).

Petitioner is not subject to mandatory detention. The parties agree that Petitioner is subject to a final order of removal. (ECF Nos. 19 at 21; 23 at 1-2.) Petitioner did not

3

appeal the IJ's removal order and therefore the order became final the date it was issued: February 27, 2026. *See* 8 U.S.C. § 1231(a)(1)(B)(i). The 90-day mandatory removal period therefore ended on May 28. While Petitioner has not been detained over six months, the Court finds Petitioner rebuts the presumptive reasonableness of continuing his detention for another month. The Court agrees with Petitioner that "*Zadvydas* established a constitutional limit on post-final-order detention, but it did not establish an impenetrable safe harbor." (ECF No. 19 at 12.) Petitioner cites nine cases in this District where habeas petitioners rebutted the six-month presumption. (*Id.* at 13.)[2]

Petitioner argues his removal is unlikely in the foreseeable future. (*Id.* at 14.) Petitioner states Respondents have not made any attempts to obtain travel documents for Petitioner nor have Respondents demonstrated Ecuador would be willing to accept Petitioner. (*Id.* (citing *Cruz v. Mullin*, No. 2:26-cv-00853-APG-EJY, 2026 WL 1481533, at *3 (D. Nev. May 27, 2026); *Perez Canet*, 2026 WL 1091753, at *4; *Castillo v. Chestnut*, No. 1:25-cv-01296-SAB-HC, 2026 WL 121652, at *13 (E.D. Cal. Jan. 16, 2026)).)

[2] "*Guerra v. Mattos*, No. 2:26-cv-01401-GMN-WJU, 2026 WL 1786353, at **3-4 (D. Nev. June 22, 2026) (granting *Zadvydas* relief where Petitioner had been in post-removal detention for 5 months.); *Agake v. Blanche* No. 2:26-cv-0130-GMN-MDC, 2026 WL 1431091, at **3-4 (D. Nev. May 21, 2026) (granting *Zadvydas* relief where Petitioner had been in post-removal detention for 5 months.); *Gallardo v. Mullin*, No. 2:26-cv-01135-MMD-MDC, 2026 WL 1229083, at *2 (D. Nev. May 5, 2026) (granting Zadvydas relief where Petitioner had been in post-removal detention for 5 months.); *Rizo v. Bondi*, No. 2:26-cv-00421-MMD-EJY, 2026 WL 1180266, at *2–3 (D. Nev. Apr. 30, 2026) (granting Zadvydas relief after 90-day post-period had passed); *Perez Canet v. Blanche*, No. 2:26-cv-00223-APG-NJK, 2026 WL 1091763, at *3 (D. Nev. Apr. 22, 2026) (granting Zadvydas relief after 90-day post-period had passed); *Diaz v. Bondi*, No. 2:26-cv-00310-MMD-MDC, 2026 WL 905848, at *3 (D. Nev. Apr. 2, 2026) (granting Zadvydas relief to Petitioner who had completed 5½ months in post-removal detention); *Vijdani v. Mattos*, 2:25-cv-02496-GMN-EJY, 2026 WL 560209, at *3-4 (D. Nev. Feb. 27, 2026) (granting *Zadvydas* relief after 90-day post-period had passed); *Celis v. Bondi*, No. 2:26-cv-00079-GMN-DJA, 2026 WL 710961, at *2–3 (D. Nev. Mar. 13, 2026) (granting Zadvydas relief where Petitioner had been in post-removal detention for 5 months.); *Alkarori v. Nev. Southern Det. Center*, No. 2:25-cv-02567-MMD-MDC, 2026 WL 266756, at **2–3 (D. Nev. Feb. 2, 2026) (granting *Zadvydas* relief to Petitioner who had completed 5½ months in post-removal detention)."

Petitioner cites evidence that Ecuador likely caps removals under the ACA to 300 individuals annually. (*Id.* at 15 (citing Third County Deportation Watch, *Ecuador* (March 11, 2026), https://www.thirdcountrydeportationwatch.org/ecuador).) Petitioner argues it is highly unlikely he will be accepted into Ecuador under the ACA when over 8,000 individuals have been designed for removal under the same limited basis. (*Id.*)

Respondents do not address these bases for concluding Petitioner will not be removed to Ecuador in the foreseeable future. "Respondents do not provide an affidavit from an ICE official about what steps have been taken to further removal. Respondents fail to provide travel documents, records of requesting travel documents, or communications between ICE and Ecuador regarding removal." (ECF No. 24 at 2.) Respondents only make the conclusory statement that "based on information obtained from ICE, the Petitioner will be removed to Ecuador in the reasonably foreseeable future." (ECF No. 23 at 1-2.) The only documentation Respondents cite to support this conclusion is the IJ's removal order. (*Id.* (citing ECF No. 7-1 at 50-53).) The IJ issued this order five months ago. The order itself does not contemplate DHS's ability or steps taken to execute the order. "Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025). The Court finds Respondents' unsupported, one-sentence conclusory statement insufficient. The Court therefore finds Petitioner's continued detention is unlawful and grants the Petition as to Ground One.

## IV.    CONCLUSION

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Petition. In particular, because the Court grants Petitioner's requested relief on Ground

One, it does not address the arguments in Grounds Two or Three as they would not impact the outcome of the case.

It is therefore ordered that the Petition (ECF No. 19) is granted. Respondents must immediately release Petitioner no later than 5:00 PM on Wednesday, July 29, 2026, subject to reasonable terms of supervision. *See* 8 U.S.C. §§ 1231(a)(6), (a)(3). Determining reasonable terms of supervision shall not in any way impede the immediate release of Petitioner.

It is further ordered that in effectuating Petitioner's release, the parties must comply with the stipulated terms for release adopted in the class action lawsuit pending before the District. *See* Joint Proposed Process for the Release of Habeas Petitioners from Immigration Detention, Jacobo-Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC (D. Nev. June 12, 2026), (ECF No. 158).

It is further ordered that the parties shall file a joint status report by Thursday, July 30, 2026 confirming Respondents' compliance with this Order.

The Clerk of Court is instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case.

DATED THIS 28th Day of July 2026

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

6